## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CATHERINE HAMILTON,             *
                                *
    Plaintiff,               *    CIVIL ACTION NO. 15-00122-B
                                *
vs.                             *
                                *
CAROLYN W. COLVIN,              *
Commissioner of Social          *
Security,                       *
                                *
    Defendant.               *

## ORDER

Plaintiff Catherine Hamilton (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On June 20, 2016, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 25, 26). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.  **Procedural History**

Plaintiff filed her applications for benefits on August 24, 2011.  (Tr. 86-91)[1].  Plaintiff alleged that she has been disabled since April 1, 2011, due to pancreatitis, liver disease, migraines, depression, possible Lupus diagnosis, and possible rheumatoid arthritis.  (Id. at 101, 105).  Plaintiff's applications were denied, and upon timely request, she was granted an administrative hearing before Administrative Law Judge Ben Sheely (hereinafter "ALJ") on February 15, 2013.  (Id. at 46, 584).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 584, 585).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 602).  On August 8, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 14, 27).  The Appeals Council denied Plaintiff's request for review on January 27, 2015.  (Id. at 6).  Therefore, the ALJ's decision dated August 8, 2013, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is

---

[1] When referencing the Social Security Transcript, the Court uses the page numbers found on the transcript, rather than the page numbers utilized by CM-ECF.

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).


II. **Issue on Appeal**

   1. **Whether the ALJ properly evaluated Plaintiff's credibility?**


III. **Factual Background**

Plaintiff was born on January 1, 1962, and was fifty-one years of age at the time of her administrative hearing on February 15, 2013. (Tr. 101, 579). Plaintiff testified that she quit school in the middle of the eighth grade but subsequently obtained her GED. (Id. at 585). Plaintiff last worked in 2011 as a cafeteria worker, a job which she held for three years. (Id. at 107-08, 590). In 2007, Plaintiff worked as a cashier at Walmart for about a year and a half, and she left that position for a job as a bank teller. She held the bank teller job for about six months. (Id. at 107, 590).

According to Plaintiff, she quit her job in 2011 because she was no longer physically able to do it. (Id. at 588). She testified that she has problems with forgetfulness, her back freezing up on her, weakness, and fatigue. (Id. at 588-89).

In 2011, while living in Texas, Plaintiff was diagnosed with fibromyalgia by a neurologist, Dr. Anand Mehendale, M.D.. He prescribed Gabapentin and exercise. (Id. at 300-01, 589).

Plaintiff testified that when she moved to Alabama in 2011, she stopped taking a lot of her medications because she could not afford them. (Id. at 587, 589). However, Plaintiff subsequently resumed taking Gabapentin for fibromyalgia, and it is helping. (Id. at 589).

Plaintiff testified that she also has a history of pancreatitis (in 2007), which has been controlled with medication, as well as liver problems, migraines, arthritis, and back pain. (Id. at 590-91, 601). Plaintiff testified that when the migraines get bad, she goes to the emergency room. (Id. at 591). She takes Relpax for her migraines, which sometimes helps. (Id.). Plaintiff also takes a non-narcotic medication for her back pain. (Id. at 595). Plaintiff also testified that she has problems with depression and feelings of worthlessness. (Id. at 592). She saw a psychologist at Altapointe on two occasions (in June and July 2012) but did not return because she did not have the money to see the doctor (although it was free to see the therapist), and she did not want to bother her mother to take her back. (Id. at 592-93, 599).

According to Plaintiff, her "main" problems are migraines, depression, and fibromyalgia. (Id. at 591). She receives treatment at the Franklin Clinic about once every three months for these conditions. (Id. at 587-88).

Plaintiff testified that she was in the middle of a divorce

when she left Texas in 2011 and that she lives with her mom in Alabama and has no children living with her.  (Id. at 586, 600-01).  She tries to do housework and yard work, but she cannot because her back freezes up.  (Id. at 594-595).  Plaintiff testified that she has no social activities.  (Id. at 596).  She has a valid drivers license but does not have a vehicle.  (Id. at 593).  Her daily routine consists of having coffee, laying around, and gaining weight.  (Id.).

Plaintiff reported to the Agency in a Function Report dated September 9, 2011, that she has no problems with personal care, although she gets tired (id. at 114); she does not need reminders for personal care, and she has a pill box to remind her to take her medications (id. at 115); she can prepare simple meals (id.); she does the dishes and laundry but needs help vacuuming and sweeping (id.); she does not do yard work (id. at 116); she goes out alone and drives (id.); she shops and handles all of her own finances (id.); her hobbies are computer and Facebook (id. at 117); she has no problems getting along with family, friends, or others (id. at 118); she can walk approximately fifty feet and then has to rest for one to two minutes (id.); she is easily distracted (id.); she can follow written instructions "good," and spoken instructions "good if they are not long" (id.); she gets along with authority figures "great" (id. at 119); and she does not handle stress well but

handles changes in routine "ok" (id. at 119).  She reported that she has no side effects from her medications.  (Id. at 120).


## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial

---

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B. Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3] 20 C.F.R.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2011, the alleged onset date, and that she has the severe impairments of fibromyalgia, history of pancreatitis, migraine headaches, depression, and personality disorder.[4] (Tr. 16). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 18).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that Plaintiff "can lift and carry 20 pounds

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[4] The ALJ found Plaintiff's arthritis and back pain to be non-severe, noting that results of diagnostic testing revealed largely normal or minimal objective findings. (Tr. 17-19).

occasionally, 10 pounds frequently.  [She] can stand and walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday with normal breaks.  [She] can occasionally climb ramps and stairs.  [She] cannot climb ladders, ropes, or scaffolds.  [She] can occasionally balance, stoop, kneel, crouch, and crawl.  [She] cannot tolerate concentrated exposure to workplace hazards such as unprotected heights or unprotected machinery.  [She] can perform simple, routine, repetitive tasks involving only simple work related decisions with few work place changes.  [She] can tolerate occasional interaction with the public and coworkers."  (Id. at 19-20).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible for the reasons explained in the decision. (Id. at 20).

The ALJ found that Plaintiff is unable to perform any past relevant work.  (Id. at 25).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "router," "assembler," and "silver wrapper," all of which are

classified as light and unskilled. (Id. at 26). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1. Issue

#### A. Whether the ALJ properly evaluated Plaintiff's credibility?

In this case, Plaintiff argues that the ALJ erred in finding her statements about the intensity, persistence, and limiting effects of her symptoms not entirely credible. (Doc. 18 at 2). According to Plaintiff, she is disabled because of migraines, fibromyalgia, depression, personality disorder, and ankylosing spondylitis[5] (spinal arthritis). (Id. at 4). The

---

[5]Plaintiff alleges disability from ankylosing spondylitis for the first time in her brief on appeal. She has attached four pages of medical records from Franklin Primary Health Center, one of which references ankylosing spondylitis, for consideration on appeal. (Doc. 18 at 6-9). The Court notes that the sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable. Enix v. Commissioner of Soc. Sec., 461 Fed. Appx. 861, 863 (11th Cir. 2012) (citing 42 U.S.C. § 405(g)). "'[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.'" Id. (quoting Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007)). "To show that a sentence six remand is needed, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result and (3) there is good cause for the failure to submit the evidence at the administrative level." Id. (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir.1986)

(internal quotation marks omitted)). "The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ") decision." Id. (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) and 20 C.F.R. §§ 404.970(b), 416.1470(b), requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). "Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review." Id. (citing Wilson, 179 F.3d at 1279). "In contrast, evidence of a condition that existed prior to the ALJ's hearing, but was not discovered until afterward, is new and non-cumulative." Id. (citing Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (concluding that remand was warranted based on evidence that after the ALJ hearing, a doctor discovered and surgically corrected a herniated disk, which was material to the issue of the severity of claimant's spinal problems during the relevant time period); Hyde v. Bowen, 823 F.2d 456, 459 & n.4 (11th Cir. 1987) (concluding that remand was warranted based on new evidence that claimant's prosthetic device was loose, which, "if accepted" provides "an objective medical explanation" for claimant's previously unexplained complaints of pain in his hip and leg).

In the present case, some of the additional evidence proffered by Plaintiff relates to her treatment for cervical and lumbar pain at Franklin Primary Health Center on November 12, 2014, after the ALJ issued his decision on August 8, 2013; thus, it is new evidence that was not previously presented to the ALJ. However, the treatment notes dated November 12, 2014, reflect only a *suggestion* by her physician that she "may" have ankylosing spondylitis, which could explain the severe pain that she is experiencing in her *neck*. In her proceedings before the ALJ, Plaintiff complained of back pain, which the ALJ found to be non-severe, but she did not allege problems with her neck. Therefore, this new evidence represents a different, additional claim and does not provide insight into whether Plaintiff was disabled from a medical condition at issue during the specific period under review. Moreover, because of the speculative nature of the evidence, even if the Court were to assume that it related to a medical condition raised during the period under review, such as Plaintiff's complaints of low back pain, Plaintiff has not established a reasonable possibility that consideration of the new evidence would change the

Commissioner counters that the ALJ properly evaluated Plaintiff's credibility and that Plaintiff's claims about the disabling effects of her physical and mental conditions are inconsistent with the medical evidence in the case, including the conservative nature of her medical treatment, the findings and opinions of her treating and examining physicians, the results of her diagnostic tests, and her activities of daily living. (Doc. 23 at 1, 5). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the pain (or other subjective symptoms) affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies. That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical

---

administrative outcome. Also, Plaintiff has attached a treatment note from Franklin Primary Health Center dated March 7, 2013, related to treatment for fibromyalgia and rheumatoid arthritis. (Doc. 18 at 9). This document is in the record and is not new evidence. (Tr. 574). For each of these reasons, Plaintiff's argument regarding new evidence is unavailing.

evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations further provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Stated differently, "if a claimant testifies to disabling pain [or other subjective symptoms] and satisfies the three part pain standard, he must be found

disabled unless that testimony is properly discredited." Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1186 (N.D. Ala. 2006). Therefore, once the determination has been made that a claimant has satisfied the three-part standard, the ALJ must then turn to the question of the credibility of the claimant's subjective complaints. See id., 444 F. Supp. 2d at 1189 n.1 (the three-part standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility."). If a claimant does not meet the standard, no credibility determination is required. Id.

In assessing a claimant's credibility, the ALJ must consider all of the claimant's statements about his symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 404.1528. Such credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding." Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562); see also Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility

is required, the implication must be obvious to the reviewing court). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain or other subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated on other grounds and reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

In this case, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was "not entirely credible" based on the inconsistency between her testimony and the other record evidence.[6] (Id. at 20-25). The record confirms the ALJ's

---

[6] As the ALJ noted, Plaintiff claims that she is disabled due to pancreatitis, liver disease, migraines, depression, personality

findings that Plaintiff has had only sporadic medical treatment in the past few years and that all of her symptoms (including pain) have been treated with medication only; that her diagnostic work ups have not shown any significant physical problems; that there has been no evidence that she has ever been referred to or sought treatment from a specialist for her physical impairments since moving to Alabama in October 2011, such as a gastroenterologist, neurologist, or rheumatologist; and that none of her treating physicians has opined that she is unable to work or disabled due to a physical or mental condition.

Specifically, the record shows that Plaintiff was diagnosed with pancreatitis in 2007 after complaining of abdominal pain and that her gall bladder was successfully removed, resulting in a resolution of symptoms. (Id. at 321-22). A CT scan conducted in May 2011 showed a "normal" pancreas. (Id. at 194). Since 2007, Plaintiff's gastrointestinal workups have been essentially normal, with the exception of moderate steatosis of the liver

---

disorder, possible lupus, possible rheumatoid arthritis, and fibromyalgia, and, because of these impairments, she is always in pain in her stomach, legs, hands, back, and feet, and is tired all the time. (Tr. 20, 105, 584, 588). In addition, Plaintiff claims to have fallen multiple times and that her memory has gotten worse, that she cannot concentrate or focus on anything, that she is in pain every day, that her depression has deepened, and that she has migraines at least fourteen days a month but often times more. (Id. at 20, 141; Doc. 18).

(the infiltration of fat into the liver) and elevated liver function tests. (Id. at 175, 194, 292-93). A CT scan conducted in May 2011 showed that the enlargement of Plaintiff's liver was "stable." (Id. at 194). Likewise, an echogram conducted in March 2011 showed that her liver was "echogenic consistent with fatty infiltration" but that there was "no acute abnormality." (Id. at 230). In April 2011, an EGD revealed only "mild" chronic, nonerosive gastritis and otherwise normal esophagus, stomach, and small intestine. (Id. at 223, 225). In January 2012, Plaintiff's treatment provider at Franklin Primary Health Center diagnosed her with GERD and prescribed Nexium. (Id. at 467). Plaintiff's gastrointestinal symptoms appear to have been successfully managed with medication, and she has not sought treatment from nor been referred to a gastroenterologist since moving to Alabama in 2011.

With respect to Plaintiff's migraines, her treatment records show that she has had two MRIs of her brain (one in 2009 and a second in 2011), neither of which showed any significant abnormalities. (Id. at 153, 289). A CT scan of her brain taken in August 2010 was also normal. (Id. at 275). Prior to moving to Alabama in 2011, Plaintiff was treated by a neurologist in Texas, Dr. Anand Mehendale, M.D., for "headache," for which he prescribed Propranolol. (Id. at 457). Since moving to Alabama in October 2011, Plaintiff has received treatment for her

migraines at Franklin Primary Health Center, where she has been prescribed Propranolol and Relpax.  (Id. at 483, 506, 508). Plaintiff reported that both medications have helped.  (Id. at 508, 591).   On July 2, 2012, Plaintiff presented to the emergency room at South Baldwin Regional Medical Center complaining of a headache and was treated with Toradol and sent home.  (Id. at 469-70).  This is the only record evidence of Plaintiff seeking emergency room treatment for any ailment since moving to Alabama in October 2011.  (Id. at 469).  Other than treatment by a primary care physician with medication, there is no evidence that Plaintiff has received any other treatment or been referred to a neurologist or any other specialist for her migraines since moving to Alabama.

With respect to Plaintiff's complaints of low back pain, which the ALJ found to be non-severe (id. at 17-19), the record shows that Plaintiff presented to the emergency room at Peterson Regional Medical Center in Texas in April 2011, complaining of hip and lower back pain, and her examining physician found nothing to explain her complaints of pain and noted that he "observed [her] walking with minimal difficulty."  (Id. at 213-14).  X-rays of Plaintiff's hip and pelvis at that time were normal.  (Id. at 220).  Likewise, an MRI of Plaintiff's lumbar spine taken in April 2011 showed no significant disc disease or central canal or foraminal encroachment at any level, and an MRI

of Plaintiff's thoracic spine showed "very minimal" small disc bulges with no significant central canal or foraminal encroachment at any level, with normal cord signal throughout. (Id. at 201-02).  Since that time, Plaintiff's medical records show intermittent complaints of back pain for which she has been treated conservatively with pain medication.  (Id. at 205, 214).

With respect to Plaintiff's fibromyalgia, the ALJ noted that Plaintiff was treated in Texas by a neurologist, Dr. Mehendale, from August 2011 to October 2011.  Dr. Mehendale found that Plaintiff met the criteria for fibromyalgia based on her complaints, and he prescribed Cymbalta, Gabapentin, and Ultram and instructed her to exercise.[7]  (Id. at 300-01, 457). There is no evidence that Plaintiff sought follow up treatment with Dr. Mehendale or with another neurologist after moving to Alabama in October 2011.  From January 2012 to March 2013, Plaintiff received treatment for fibromyalgia at Franklin Primary Health Center, where she was prescribed medication. (Id. at 464-65, 483-510).  At no time since moving to Alabama in October 2011 have Plaintiff's treatment providers referred her

---

[7] Dr. Mehendale ruled out lumbar and cervical radiculopathy, polyneuropathy, and lupus.  (Tr. 457).  Also, on September 28, 2011, Dr. Mehendale completed a "Treating Physical Mental Function Assessment  Questionnaire" stating that he was not treating Plaintiff for a mental condition and that he had not recommended treatment for a mental condition.  (Id. at 306).

to a neurologist or any other specialist for treatment of her fibromyalgia.[8]  (Id.).

With respect to Plaintiff's depression, the record shows that she has received treatment from her primary care physicians with psychotropic medications, primarily Cymbalta, and that the treatment has been largely effective and well tolerated.  (Id. at 120, 382, 390, 392, 400, 483, 500, 506, 508, 599).  With the exception of two visits to Altapointe in June and July of 2012, when Plaintiff presented for an intake assessment and never returned, she has not sought treatment for her depression from a mental health specialist.  (Id. at 471-77).  During her brief assessment at Altapointe, Plaintiff reported that she and her husband had separated and that she was depressed.  (Id. at 472, 477).  Her assessment notes reflect that she was experiencing episodes of crying, that her memory and concentration were impaired, that her insight and judgment were fair, and that her ability to care for herself was "good."  (Id. at 472, 474).  She

---

[8] State Agency neurologist, Dr. Elizabeth Minto, M.D., reviewed Plaintiff's records on November 22, 2011, and completed a Physical RFC assessment, finding that Plaintiff can occasionally lift or carry 20 pounds, can frequently lift or carry 10 pounds, can stand and/or walk for a total of 6 hours in an 8-hour workday, can sit for a total of 6 hours in an 8-hour workday, and is unlimited in her ability to push or pull.  (Tr. 36).  In addition, Dr. Minto found that Plaintiff can frequently climb (ramps, stairs, ladders, ropes, scaffolds), balance, stoop, kneel, crouch, and crawl, and she is unlimited in her ability to reach, finger, and feel but can only "handle" with her right hand frequently and left hand only occasionally.  (Id. at 36).

was diagnosed with depressive disorder, adjustment disorder with
anxiety and depressed mood, and personality disorder.  (Id. at
471).  She was not prescribed any medication, and she never
returned.[9]

On December 12, 2011, Plaintiff was examined at the request
of the Agency by consultative psychologist Dr. Jennifer Jackson,
Psy. D.  (Id. at 309).  Dr. Jackson diagnosed Plaintiff with
"dysthymia" (persistent mild depression) and opined that a
favorable response to treatment could be expected within six to
twelve months.  (Id. at 311).  Dr. Jackson did not identify any
functional limitations and found no evidence of a personality
disorder.[10]   (Id.).

---

[9] As the ALJ found (id. at 24), Plaintiff has not participated in
mental health counseling; she has not required emergency room
treatment for her mental impairments; she has not required
inpatient psychiatric treatment; and none of her treating
providers has ever identified any functional limitations related
to her mental impairments.

[10] Dr. Jackson's mental status exam revealed that Plaintiff was
appropriately dressed and groomed, that she displayed no obvious
difficulties with fine or gross motor skills, that her speech
was easily understood, that she was generally pleasant and
cooperative, that no unusual behaviors were observed, that she
appeared "very depressed," that her affect was tearful, but that
she was not anxious.  (Tr. 310).  Plaintiff was oriented to
time, place, and person; her concentration and attention were
normal; her memory (immediate, recent, and remote) was normal;
her fund of information was normal; her abstract thinking,
thought process, and thought content were normal (except that
she reported having thought about suicide without imminent plans
to harm herself); and her judgment and insight were limited.
(Id. at 311).  Plaintiff reported that she was capable of
completing all personal activities of daily living

In addition, the evidence of Plaintiff's activities of daily living shows that she has no problems with personal care (id. at 114); she cooks, washes dishes, does laundry, makes beds, cleans bathrooms (id. at 115-16, 312); drives and goes out alone (id. at 116, 312); handles all of her own finances (id. at 116, 312); spends time on the computer (id. at 117); gets along well with family, friends, and others and "love[s] being around people" (id. at 118, 312); has no problems interacting with or getting along with others (id. at 312); follows instructions well (id. at 118); gets along "great" with authority figures (id. at 119); and handles changes in routine "ok." (Id. at 119).

"When evaluating a claimant's credibility, an ALJ . . . may consider any inconsistencies between a claimant's alleged limitations and his [or her] daily activities." Lambeth v. Astrue, 2011 U.S. Dist. LEXIS 75150, *27, 2011 WL 2784560, *9 (S.D. Ala. July 12, 2011) (citing Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987)). As in Lambeth, Plaintiff's varied daily

---

independently, that she could wash dishes, sweep, mop, vacuum, make a bed, clean a bathroom, cook, do laundry, and drive, and that she could handle money, shop independently, and stay at home unsupervised. (Id. at 312). Plaintiff reported having trouble concentrating, being slow when doing things, and not finishing what she starts. (Id. at 312). Plaintiff also reported that she is not afraid of people, that she "love[s] being around people," and that she has no problems interacting with or getting along with others. (Id. at 312).

activities in this case are inconsistent with her claim that her medical impairments (in this case fibromyalgia, history of pancreatitis, arthritis, migraine headaches, depression, and personality disorder), render her completely unable to work. Thus, the ALJ's reasons for finding Plaintiff's allegations regarding the severity of her symptoms to be less than fully credible are supported by the record.[11]

The ALJ specifically addressed Plaintiff's allegations of pain and other subjective symptoms in his decision, and he provided explicit and reasonable reasons for partially rejecting her testimony. See 20 C.F.R. § 404.1529(c)(2)-(4); (Tr. 20-25). As the foregoing demonstrates, the substantial evidence in this case supports the ALJ's decision to discount Plaintiff's complaints of pain and other subjective symptoms, and it supports the ALJ's finding that Plaintiff can perform a range of light work with the stated restrictions. Therefore, Plaintiff's claim is without merit.

---

[11] The Court rejects Plaintiff's argument that the ALJ was biased against her because she is a smoker. While the ALJ referenced Plaintiff's smoking habit (id. at 23), he did so in the context of her claim that she could not afford medications or medical treatment, finding that claim less than credible given the fact that she chose instead to fund a smoking habit. See Smith v. Colvin, 2016 U.S. Dist. LEXIS 29991, *16-17, 2016 WL 892776, *6 (N.D. Ala. Mar. 9, 2016) ("The ALJ did consider [plaintiff's] claim that she could no longer afford treatment because she had no health insurance in 2011, but the ALJ also considered that she was able to finance her smoking habit of half a pack a day," which "undermined her credibility.").

Finally, the undersigned notes that Plaintiff alleges disability from ankylosing spondylitis for the first time in her brief on appeal. She has attached four pages of medical records from Franklin Primary Health Center, one of which references ankylosing spondylitis, for consideration on appeal. (Doc. 18 at 6-9).

The Court notes that the sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable. Enix v. Commissioner of Soc. Sec., 461 Fed. Appx. 861, 863 (11th Cir. 2012) (citing 42 U.S.C. § 405(g)). "'[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.'" Id. (quoting Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007)). "To show that a sentence six remand is needed, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result and (3) there is good cause for the failure to submit the evidence at the administrative level." Id. (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir.1986) (internal quotation marks omitted)).

"The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ") decision." Id. (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) and 20 C.F.R. §§ 404.970(b), 416.1470(b), requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). "Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review." Id. (citing Wilson, 179 F.3d at 1279). "In contrast, evidence of a condition that existed prior to the ALJ's hearing, but was not discovered until afterward, is new and non-cumulative." Id. (citing Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (concluding that remand was warranted based on evidence that after the ALJ hearing, a doctor discovered and surgically corrected a herniated disk, which was material to the issue of the severity of claimant's spinal problems during the relevant time period); Hyde v. Bowen, 823 F.2d 456, 459 & n.4 (11th Cir. 1987) (concluding that remand was warranted based on new evidence that claimant's prosthetic device was loose, which, "if accepted" provides "an objective medical explanation" for claimant's previously unexplained complaints of pain in his hip and leg)).

In the present case, some of the additional evidence proffered by Plaintiff relates to her treatment for cervical and lumbar pain at Franklin Primary Health Center on November 12, 2014, which is after the ALJ issued his decision on August 8, 2013. Thus, it is new evidence that did not exist and was not previously presented to the ALJ. However, the treatment notes dated November 12, 2014 reflect only a *suggestion* by her physician that she "may" have ankylosing spondylitis, which could explain the severe pain that she is experiencing in her *neck*. In her proceedings before the ALJ, Plaintiff complained of back pain, which the ALJ found to be non-severe, but she did not allege problems with her neck. Therefore, this new evidence represents a different, additional claim and does not provide insight into whether Plaintiff was disabled from a medical condition at issue during the specific period under review. Moreover, because of the speculative nature of the evidence, even if the Court were to assume that it related to a medical condition raised during the period under review, such as Plaintiff's complaints of low back pain, Plaintiff has not established a reasonable possibility that consideration of the new evidence would change the administrative outcome.

Also, Plaintiff has attached a treatment note from Franklin Primary Health Center dated March 7, 2013, related to treatment for fibromyalgia and rheumatoid arthritis. (Doc. 18 at 9).

This document is in the record and is not new evidence.  (Tr. 574).  For each of these reasons, Plaintiff's argument regarding new evidence is unavailing.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **28th** day of **September, 2016.**

    /s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

27